NOT FOR PUBLICATION                                    [Docket No. 39]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                              :
LINDA CISCO HUNTER,           :
                              :
          Plaintiff,          :   Civil No. 04-1498 (RMB)
                              :
     v.                       :   **OPINION**
                              :
ROWAN UNIVERSITY  et al.,     :
                              :
          Defendants.         :
_____:

APPEARANCES:

Dennis K. Kuroishi, Esq.
7 East Kings Highway
Mount Ephraim, NJ
          Attorney for Plaintiff


Michele A. Daitz
Deputy Attorney General
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625
          Attorney for Defendants

**BUMB**, United States District Judge:

**Introduction:**

          This matter comes before the Court upon Defendants',

Rowan University ("Rowan") and Dean Dianne Dorland ("Dorland"),

motion for summary judgment.  Pursuant to a Complaint filed with

this Court on March 31, 2004, Plaintiff, Linda Cisco Hunter,

1

alleges that Rowan and Dorland discriminated against her on the basis of her race, (she is Caucasian), in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and discriminated against her on the basis of both race and national origin in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12.  Additionally, Plaintiff alleges that she was discriminated against because of her age in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621 <u>et seq</u>., and the NJLAD.  She also contends that the NJLAD was violated when she was retaliated against for engaging in protected activity.  Finally, Plaintiff alleges that Defendants conspired to carry out racial discrimination in violation of 42 U.S.C. § 1985.  This Court has reviewed the parties' papers, heard oral argument on the motion and, for the reasons discussed below, Defendants' motion for summary judgment will be granted as to Plaintiff's race and age claims.

**Background:**

As an initial matter, Plaintiff's counsel has taken issue with the fact that there was no affidavit of counsel introducing Defendants' exhibits.  There appears to be no good faith basis for the objections because, as pointed out in Defendants' reply, Plaintiff identified nearly all the exhibits

in her deposition.  (Defs.' Reply. at 2-3).  Moreover, Defendants have presented affidavits authenticating those exhibits in their reply.  When pressed at oral argument, Plaintiff's counsel inveighed about the exhibits, stating that they were not admissible business records because they were prepared while Plaintiff's grievance was pending.  By this logic, any time an employee has a pending grievance, related documents would be inadmissible on a motion for summary judgment.  This Court rejects this argument in its entirety; the documents have been properly authenticated and are admissible for purposes of this motion.

Plaintiff Linda Cisco Hunter ("Hunter"), a Caucasian woman born September 18, 1947, was hired by Defendant Rowan in 1994.  In 1995, Hunter became an Administrative Assistant holding the title of "Administrative Assistant I."  Plaintiff's employment was governed by the terms of a Collective Bargaining Agreement.  From 1995 through 2000, Hunter worked as the Assistant to Dean James Tracey of the College of Engineering.

In 2000, Dianne Dorland, the individual Defendant in this case, became Dean of the College of Engineering.  At her deposition, Dean Dorland testified that she sought to formally create the Outreach Office soon after her arrival and that it was a "very important area". (Dorland Dep. 81:8-25).  In an August

28, 2000, Memorandum, Dean Dorland announced to the Faculty and Staff of Rowan Engineering that Plaintiff would be assigned to work in the School of Engineering's Outreach Office ("Outreach"). (Defs.' Ex. D).  As a result, Plaintiff's office was relocated to Room 106.  (Id.).  Plaintiff's status as "Administrative Assistant I" remained the same as did her salary and benefits. (Pl.'s Dep. at 86-87).

Soon after Plaintiff's assignment to Outreach, the Outreach Director, Melanie Basantis, commenced maternity leave. On August 29, 2000, Plaintiff received an email from Dean Dorland thanking her for her concerns of doing both Basantis' work and that of the Engineering Outreach Assistant. (Defs.' Ex. E).  Dean Dorland responded by saying that she was assigning the responsibilities of Outreach Director to Dr. Steven Chin, Associate Dean of Engineering, during Basantis' leave and that Plaintiff's work would be directed by him.  The email also stated that, while Plaintiff was directed and supervised by the Director, the Dean had final responsibility for Plaintiff's evaluations. (Id.).

On February 6, 2001, Dr. Chin performed an assessment of Hunter's work that indicated that her performance had been "unsatisfactory." (Defs.' Ex. F).  On February 19, 2001, Nicholas DiObilda, Plaintiff's Union representative, wrote a letter to Robert Zazzali, Associate Provost, telling him that Plaintiff was

not provided with a job description when she started her new position, that she was not given clear direction by Dr. Chin and "an attempt...to address these issues with Dean Dorland and Dr. Chin led to an unproductive exchange that did not solve any problems." (Defs.' Ex. G).  The letter stated that Plaintiff's work environment is "tension-filled and uncomfortable" as a result of management issues. (Id.).

A meeting was held on March 5, 2001, regarding Plaintiff's concerns; Plaintiff, Zazzali, DiOilda, Chin and Dorland attended.  Following this meeting, Plaintiff was again evaluated at the end of April 2001 by Ralph Alan Dusseau, DRBA Professor and Chair, Melanie Basantis, Director of Engineering Outreach, Lori Block, Assistant Director of Career and Academic Planning Center, and Dr. Steven Chin. (Pl.'s Ex. O at D 72-81). The evaluations stated, roughly, as follows:

- Dusseau stated that Plaintiff was "exceptional" and supported her reappointment as Administrative Assistant.

- Basantis rated Plaintiff as "reliable and dependable."

- Block stated that Plaintiff is someone who is "extremely competent" and supported her re-contracting.

- Chin wrote an evaluation noting improvement in some areas after he had expressed concerns about Plaintiff's performance in the past.  Chin suggested specific areas of improvement.

- Dorland wrote a letter to Donald Farish, President of the University, asking to defer her final

evaluation of Plaintiff as the evaluations of others "differ significantly in conclusion." As of the date of the letter, April 30, 2001, Dorland stated that she would not recommend re-contracting at that time, but would give Plaintiff "more opportunity to provide positive examples of her work and potential" by deferring the final evaluation until December 2001.

On May 7, 2001, Plaintiff wrote President Farish asking him to consider renewing her contract. (Pl.'s Ex. O at D 82-83). Plaintiff stated that she was aware that the "new Dean has expressed concerns with my performance" and "[p]erhaps I needed to ask more questions regarding a different management style and expectations." (Id.). Plaintiff indicated that her positive evaluations were evidence of her commitment to Rowan and that she hoped that "Dorland will reconsider her initial assessment and support me." (Id.).

On September 24, 2001, Dr. Chin performed another evaluation of Plaintiff for Dean Dorland. (Defs.' Ex. K). In his evaluation, Chin noted his "serious and critical concerns on [sic [Plaintiff's] ability to contribute to the College's Outreach Office." (Id.). With his evaluation, Chin attached examples of work and the "deficiencies" that occurred with those projects which, he stated, "constitutes a continuous and continuing pattern where timeliness, quality and quantity of work is unsatisfactory." (Id.). Defendants' exhibits contain a series of emails regarding Plaintiff's performance on certain projects

including emails from Dr. Chin providing feedback and informing Plaintiff that her performance was unsatisfactory. (Defs.' Ex. K D 492 & D 515).

On October 17, 2001, Mel Moyer, Plaintiff's Union Grievance Chair, wrote a letter to President Farish grieving the non-renewal of Plaintiff's contract. (Defs.' Ex. P).  The letter cited the positive evaluations of Plaintiff and contended that the decision was made "without good cause." (Id.).  It also stated that Plaintiff had alleged "inequitable treatment, interference and intimidation...thus creating a hostile environment."  (Id.).

On November 27, 2001, Dr. Chin performed another evaluation stating that "quality of work, and timeliness in meeting stated deadlines are performance yardsticks that have not been satisfactorily achieved based on the stated requirements in the job description." (Defs.' Ex. L).  On December 6, 2001, Dean Dorland wrote an evaluation of Plaintiff recommending that Rowan not renew her contract.  (Defs.' Ex. M).  After reviewing Dean Dorland's evaluation and other materials, Helen Giles-Gee, Provost of Rowan, wrote that Plaintiff should not be recommended for reappointment. (Defs.' Ex. N).  Plaintiff submitted material in support of her appeal of re-appointment but was rejected by President Farish via letter dated March 11, 2002.  (Defs.' Ex. O).

Pursuant to her written grievance in October of 2001, Plaintiff, Robert Zazzali, and a Union representative met and negotiated a settlement of her grievance. (Defs.' Statement of Material Facts at ¶ 29 & Pl.'s Resp.; Defs.' Ex. Q). This settlement resulted in a one-year terminal appointment for the period of July 1, 2002 to June 30, 2003, and Plaintiff's assignment "to a position outside the College of Engineering that is consistent with her generic job description." (Defs.' Ex. Q). For the time period of July 1, 2002, through June 30, 2003, Plaintiff worked as an Administrative Assistant to the Dean of the College of Fine Arts. By letter dated July 9, 2003, Plaintiff stated that "[p]er our discussion regarding my termination as of 6/30/03, I have decided to retire from Rowan University."

In May of 2003, Dean Dorland requested and received approval to hire an Administrative Assistant to replace Plaintiff. (Pl.'s Reply to Defs.' Statement of Fact at ¶ 33). The position was advertised and sixty-nine individuals applied. (Id. at ¶ 35). Five candidates were chosen for interview by the search committee and three of those candidates were recommended for the position. (Id. at ¶ 38). These three candidates were interviewed by Dean Dorland. (Id. at ¶ 40). Ms. Maria Perez-Colon was hired to fill the position on December 8, 2003. (Id. at 42). Ms. Colon, who was born in 1958, was 45 at the time of

8

hire and is Hispanic.

**Standard for Summary Judgment:**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[2] Liberty

---

[1] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

[2] The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

**Discussion:**

The familiar McDonnell Douglas burden shifting framework applies to Plaintiff's claims of discrimination pursuant to § 1981, § 1983, the NJLAD and the ADEA.  See Santiago v. City of Vineland, 107 F. Supp. 2d 512, 529-543 (collecting authorities for application of framework to § 1981, § 1983 and the NJLAD); Dunleavy v. Mount Olive Twp., 183 Fed. Appx. 157, 158 (3d Cir. 2006) (stating that the same standard applies to ADEA and NJLAD)(unpublished).  Once the plaintiff has established a prima facie claim, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection."  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The burden then shifts back to the Plaintiff who must show that the nondiscriminatory reason articulated by the defendant is in fact a pretext for discrimination.  Id. at 804.  "To survive a motion for summary judgment in the employer's favor, a plaintiff must produce some evidence from which a jury could reasonably reach these conclusions."  Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006) (citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

(a) Reverse Race Discrimination: NJLAD, § 1981, § 1983 & § 1985

Defendants contend that Plaintiff was moved to Outreach because Dean Dorland no longer required an Administrative Assistant and that it was Plaintiff's sub-par performance that led to the non-renewal of her contract and that said decision was in no way based on Plaintiff's race.  Defendants further assert that "[n]one of the circumstances surrounding Plaintiff's employment, or any actions taken with regard to her employment situation, even remotely suggest a racial motive." (Defs.' Br. at 12).

Plaintiff alleges that her move to Outreach was a demotion, and that she was ostracized and not allowed to ask for help even though she was doing the work of three people.  She also argues that Rowan University, through its Affirmative Action policy, created an atmosphere of discrimination.  In support of this, Plaintiff submits exhibits regarding another case, Desanto v. Rowan University, Docket No. 99-3952, (D.N.J. 2002), also litigated by Plaintiff's counsel, where a jury found that Rowan discriminated against a white male because of his race. Plaintiff alleges that it was this Affirmative Action policy, in existence at the time of Plaintiff's counsel's prior lawsuit, that caused Rowan to effectively terminate Plaintiff (by not renewing her contract) and hire a Hispanic person as the Dean's

Administrative Assistant.[3]  Plaintiff's assertions are, however,
belied by the record which reveals that no reasonable jury could
conclude, given the totality of circumstances, that the employer
treated Plaintiff less favorably because of her race.

       This Court notes that it is unclear from Plaintiff's
papers whether the alleged adverse action based on race is the
assignment to Outreach, which Plaintiff alleges is a demotion,
her treatment while in the position i.e., her physical location
in Room 106, the failure to give her business cards and alleged
lack of guidance, or decision not to renew the contract or a
combination of the above.  During oral argument, Plaintiff's
counsel argued that both the move to Outreach and the decision
not to renew the contract constituted adverse actions.
Plaintiff's counsel also opined that the employer discriminated
against Plaintiff by failing to inform her that her former job
was being advertised as a vacant position.

       While it is clear that the decision not to renew the
contract is adverse, it is not clear that the move to Outreach
constitutes an adverse employment action.  Plaintiff states that
the move to Outreach was a "demotion" because her title was
reduced, her office was moved, she was refused business cards,
her name was taken off the directory, she no longer supervised

---

[3] It is obvious that Plaintiff relies heavily on the <u>Desanto</u>
case, which, this Court notes, is sufficiently different from the
case <u>sub judice</u>.

employees and her job duties increased.  This Court is not convinced, however, that Plaintiff has shown the aforementioned change constitutes an adverse employment action.

The Third Circuit recently affirmed a decision where the district court found that an employee, who alleged circumstances nearly identical to Plaintiff's, did not sufficiently demonstrate an adverse employment action.  See Langley v. Merck & Co., 2005 U.S. Dist. LEXIS 10220 (E.D. Pa. May 26, 2004), aff'd, 2006 U.S. Ap. LEXIS 14958 (3d Cir. June 15, 2006).  In Langely, the plaintiff alleged that she had been demoted in violation of 42 U.S.C. § 1981 because "her title changed, she no longer supervise[d] employees, she now report[ed] to the position she previously held, her duties have changed, her office was moved, there [was] no opportunity of advancement, and there [was] less opportunity for financial reward."  Id. at *7. Despite plaintiff's allegations, the court found that plaintiff had not suffered an adverse action because "her pay and grade level did not change as a result of her assignment" and, other than bald assertions, plaintiff presented no evidence to show that her new role was a dead-end position that tarnished her reputation.  Id. at *9.

As in Langely, Plaintiff in this case admits that her "technical" title of Administrative Assistant I, salary and benefits remained the same despite the move to Outreach. (Pl.'s Dep. at 86-87).  Moreover, in order to constitute an adverse

13

employment action, a change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. at * 10.  Because Plaintiff relies merely on her assertions and allegations that the move was a "demotion" yet her official title, salary and benefits remained the same, Plaintiff has not convinced this Court that the move to Outreach constitutes an adverse action.[4]  Similarly, other than her assertions, there is no evidence that Defendants hid the job vacancy from her in 2003.[5]  However, even assuming, arguendo, that, in addition to the decision not to renew her contract, Plaintiff's move to Outreach, and/or the failure to inform her of the job vacancy, is another adverse action, a reasonable jury could not conclude that any treatment Plaintiff received at Rowan was because of her race.

---

[4]  At oral argument, Defendants raised the issue of the statute of limitations for the first time and that the move to Outreach would be barred by the statute of limitations. Plaintiff's complaint in this matter was filed on March 31, 2004. Plaintiff was moved to the Outreach office in August of 2000. Pursuant to the relevant statutes at issue, except 42 U.S.C. § 1981, which has a six year statute of limitations, see Jones v. R. R. Donnelley & Sons Co., 541 U.S. 369 (2004), the move to Outreach is outside of the relevant statutes of limitation.  See Cardenas v. Massey, 269 F.3d 251, 255 (3d Cir. 2001) (stating that statute of limitation for NJLAD claims is two years); Wiltz v. Middlesex County Office of the Prosecutor, 2006 U.S. Dist. LEXIS 46821 at* 15 (D.N.J. July 10, 2006) (two year statute of limitations applies to 42 U.S.C. 1985 claims).  Even if Plaintiff's claims are timely and Defendants have not waived the statute of limitations defense by failing to raise it, Plaintiff fails to sustain her claims for the reasons discussed herein.

[5]  The job was posted in the Philadelphia Inquirer and Courier Post as of September 2003. (Defs.' Ex. T).

14

The Court utilizes the same reverse discrimination standard under the NJLAD, § 1981, and § 1983.  Ditzel v. Univ. of Med. & Dentistry, 962 F. Supp. 595, 603 n.1 (D.N.J. 1997).  In order to establish a prima facie case of reverse discrimination, Plaintiff, a Caucasian employee, must show the following:

> (i) she was qualified for the job which she held;
>
> (ii) despite her qualifications, she was terminated by her employer; and,
>
> (iii) plaintiff has presented sufficient evidence to allow a reasonable fact finder to conclude, given the totality of circumstances, that the employer treated plaintiff less favorably because of her race.

Mosca v. Cole, 384 F. Supp. 2d 757, 765 (D.N.J. 2005) aff'd 2007 U.S. App. LEXIS 3286 (3d Cir. Feb. 14, 2007).

As an initial matter, the parties hotly contest whether Plaintiff was, indeed, qualified for her job.  Plaintiff points to positive evaluations and Defendants look to the evaluations of Chin and Dorland, which show performance deficiencies.  Even if this Court were to assume, however, that Plaintiff was qualified for her job (see further discussion of qualifications infra), Plaintiff has not provided sufficient evidence from which a reasonable jury could find that the Defendants treated her less favorably because of race.

Plaintiff argues that her employer "had a reason or inclination to discriminate against her" because of its

Affirmative Action policy, coupled with the fact that the primary source of negative evaluations was Dr. Chin, an Asian American. (Pl.'s Br. at 15).  Moreover, Plaintiff states that the fact that the Provost and President who both adopted Dean Dorland's recommendation are African American support her contention. (Id.).

The fact that Dr. Chin is Asian American and wrote negative evaluations of Plaintiff and that two African Americans accepted Dean Doland's decision to not renew the Plaintiff's contract is not, without more, evidence sufficient to demonstrate an inference of discrimination.  See Iadimarco v. Runyon, 190 F.3d 151,156 (3d Cir. 1999)("the race of the selecting officials is not a sufficient circumstance to establish a prima facie case of discrimination by itself").  There is a dearth of other evidence that would allow the jury to reasonably conclude that Plaintiff was treated differently because of her race.  Indeed, Plaintiff testified at deposition that the others in the office who were allegedly treated more favorably were, in fact, Caucasian, undermining her assertion that she was treated less favorably because of her race.  See (Pl.'s Dep. at 47:8-48:21) (testifying that Mary Fischer, Cass Tansky and Melanie Basantis were Caucasian).

Plaintiff asserts that the Affirmative Action hiring form was used to select Plaintiff's replacement Maria Perez-Colon, a Hispanic female.  From this, Plaintiff believes that "a

16

jury might reasonable[ly] infer that [P]laintiff was forced out
of her position to remedy the "all white" female composition of
the...administrative support staff."  Other than Plaintiff's mere
conjecture, however, there is a paucity of evidence on the record
that shows that Rowan's Affirmative Action policy was the cause
of the alleged discrimination.  See Ridgewood Bd. of Ed. v. N.E.,
172 F.3d 238, 252 (3d Cir. 1999) (stating that, on a motion for
summary judgment, plaintiff's mere speculation and conclusory
allegations do not suffice).  In fact, during oral argument, it
became clear that the policy cited by Plaintiff was no longer in
effect at the time Dean Dorland made the final decision regarding
Plaintiff's contract renewal or when Perez-Colon was hired.  As
stated in Plaintiff's brief, the policy was in effect between
October 1, 2000 through September 30, 2001. (Pl.'s Br. at 13).
Dean Dorland made her final decision regarding Plaintiff's
recontracting on December 6, 2001, (Defs.' Ex. M), and Ms. Perez-
Colon was not hired until 2003.

        While there is evidence that "affirmative action
guidelines were followed" in the hiring of Perez-Colon, (Pl.'s
Ex. P), there is no evidence that the policy was applied to
Plaintiff's detriment.  Moreover, the existence of such a policy,
without more, is not enough to establish a prima facie case of
illegal discrimination.  See Iadimarco, 190 F.3d at 164 (stating
that a diversity memorandum is not, by itself, sufficient to
establish a prima facie case of discrimination); Reed v. Agilent

17

Technologies, Inc., 174 F. Supp. 2d 176, 186 (D. Del. 2001)(refusing to accept lawful affirmative action plan as evidence of discriminatory animus).

Even construing all reasonable inferences in favor of Plaintiff, the non-moving party, this Court concludes that Plaintiff has not presented sufficient evidence to allow a reasonable finder of fact to conclude, given the totality of circumstances, that the employer treated Plaintiff less favorably because of race. All that can be reasonably inferred from the evidence is that once Dean Dorland came on board in 2000, things changed for Plaintiff and the decision was ultimately made to not renew her contract. While Plaintiff believes race was one reason for the change, she has presented no evidence of that fact and this Court is mindful that an "employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason." Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 332 (3d Cir. 1995). As there is no evidence of such a discriminatory reason, Defendants are entitled to summary judgment on Plaintiff's race discrimination claims. Moreover, because this Court has found that no reasonable jury could find that Plaintiff was discriminated against because of race, Plaintiff's § 1985 claim also fails, as the statute requires that the alleged conspiracy be motivated by racial animus.[6]

---

[6] The four basic elements of a prima facie case pursuant to § 1985 are: (1) a conspiracy; (2) motivated by racial or class-

<u>(b) Age Discrimination: ADEA and NJLAD</u>

At oral argument, the issue of proper exhaustion of Plaintiff's ADEA claim was raised for the first time when the Court expressed concern that Plaintiff had not properly filed a charge with the EEOC.  In response, Plaintiff's counsel produced a copy of an EEOC charge dated by Plaintiff on March 10, 2004. It is unclear from this document if/when the charge was actually filed with the EEOC as there is no stamp indicating a date.  Even assuming the charge was filed on March 10, 2004, Plaintiff has not properly exhausted her administrative remedies with regard to the ADEA claim.

Proper administrative exhaustion is a pre-requisite to filing an ADEA claim in federal court.[7]  <u>See</u> <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 854 (3d Cir. 2000)("[u]nder the... ADEA, plaintiffs residing in states having an agency authorized to grant relief for federally prohibited employment discrimination must resort to that state remedy before they will be allowed access to federal judicial relief."); <u>Money v. Provident Mutual Life Ins. Co.</u>, 189 Fed. Appx. 114, 117 (3d Cir. 2006)("[a] party under the ADEA must exhaust his or her administrative remedies").

---

based discriminatory animus; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or a deprivation of any right or privilege. <u>Chambers v. Commonwealth of Pennsylvania</u>, 2006 U.S. Dist. LEXIS 93658 at *30 (M.D. Pa. Dec. 28, 2006).

[7]  At oral argument, Plaintiff's counsel readily conceded that proper exhaustion is required.

In order to properly exhaust the ADEA claim, a plaintiff must file a charge within 300 days of the adverse action.  See Watson, 235 F.3d at 854 (stating that plaintiffs in deferral states must file their administrative discrimination charge within 300 days of the challenged employment action); Cortes v. Univ. of Med. and Dentistry, 391 F. Supp. 2d 298, 307 n. 2 (D.N.J. 2005) (stating that New Jersey is a deferral state).  The adverse actions alleged by Plaintiff include her move to Outreach, which took place in August of 2000 and the decision not to renew her contract which took place in December of 2001.  These adverse actions took place well beyond the required 300 day period.

Plaintiff's counsel, defying all well-settled legal principles, stated at oral argument that the applicable time periods did not begin to run because Plaintiff remained demoted and did not leave Rowan until June 30, 2003.  However, the law on this issue is clear; statutes of limitation begin to run as of the date of the adverse action.  See Del. State College v. Ricks, 449 U.S. 250, (1980) (holding that limitations period commenced as of the date that plaintiff was notified he would not receive tenure not the last day of his employment); Watson, 235 F.3d at 855 (finding that date plaintiff was informed of his discharge was the operative date).

Plaintiff's counsel also seemed to allege that the failure to inform Plaintiff of the job vacancy in her position was an adverse action that took place in June of 2003.  While it

20

is unclear to this Court how this is an adverse action, even if it took place within 300 days of the EEOC charge, the ADEA claim was nevertheless not properly exhausted.  The ADEA itself is clear -- pursuant to Section 626(d) an aggrieved party may not file a complaint in federal court until 60 days after filing the EEOC charge.  29 U.S.C. 626(d) ("No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary"); Money, 189 Fed. Appx. at 117 (stating that "an aggrieved party may not file an age discrimination complaint in federal district court until 60 days after filing a charge with the Equal Employment Opportunity Commission").  Plaintiff allegedly filed with the EEOC on March 10, 2004, and her Complaint was filed in this Court on March 31, 2004 - only 21 days later.

Thus, while this issue was raised at the eleventh-hour and the parties failed to brief it, it appears to this Court that Plaintiff did not properly exhaust her administrative remedies under the ADEA.  However, even if she did properly exhaust, Defendants are entitled to summary judgment on Plaintiff's age claims for the reasons discussed below.

With regard to the ADEA and NJLAD, the Plaintiff must show that she (1) is a member of the protected class, i.e., at least 40 years of age, 29 U.S.C. § 631(a), (2) is qualified for the position, (3) suffered an adverse employment decision, and

(4) in the case of a demotion or discharge, was replaced by a
sufficiently younger person to create an inference of age
discrimination.  Smith v. Medpointe Healthcare, Inc., 2007 U.S.
Dist. LEXIS 10471 at * 21 (D.N.J. Feb. 15, 2007).[8]

There is no dispute that Plaintiff satisfies the first
and third prongs of the prima facie case, she was over 40 at the
time at issue and that the decision not to renew her contract
constitutes an adverse action.  Even if the alleged adverse
actions are Plaintiff's reassignment to Outreach, and her
treatment while in the position i.e., her physical location in
Room 106, the failure to give her business cards and alleged lack
of guidance, this Court, for the reasons discussed below, holds
that a reasonably jury could not conclude that Plaintiff has
shown that Defendants' legitimate, non-discriminatory reasons for
said actions are pretexual.

Defendants do not argue in their papers that Plaintiff
was not replaced by someone sufficiently younger – so this Court,
for purposes of this motion, will assume that Defendants concede
that Maria Perez-Colon is "sufficiently younger."  Instead, the
focus of the parties' respective arguments is whether Plaintiff
was actually qualified for the position.  Defendants' arguments

---

[8] In Monaco v. American General Assurance Co., 359 F.3d 296,
299 (3d Cir. 2004), the Third Circuit reconciled the standards
for establishing a prima facie case under the ADEA and the NJLAD:
"the two statutes contain similar requirements for proving the
fourth element of a plaintiff's prima facie case."

that Plaintiff was not qualified is well-documented; over the course of a year, Plaintiff received a series of negative evaluations.  Plaintiff argues that the negative evaluations were part of an elaborate scheme to deny her re-contracting. (Pl.'s Br. at 18-19).  In support of her contention that she was qualified, Plaintiff points to past positive evaluations during Dean Tracey's tenure and the positive evaluations of Derusseu, Izold and Besantis.  Plaintiff also points to a provision in the Collective Bargaining Agreement which states that "the entire professional performance record of a member of the professional staff shall be considered at the time such employee is being considered for a multi-year appointment or reappointment contract." (Pl.'s Ex. S at 57).  While the Defendants' evidence looms large, especially in light of Dr. Chin's emails to Plaintiff, the existence of positive evaluations, some contemporaneous to the negative evaluations, and the Court's obligation to construe all reasonable inferences in favor of the non-moving party, lead this Court to conclude that there remains an issue of fact as to whether Plaintiff was qualified to perform the position.

However, even if Plaintiff meets the prima facie standard, Defendants have articulated a legitimate non-discriminatory reason for their decision not to renew Plaintiff's contract: her performance was no longer satisfactory.  With regard to Plaintiff's assertion that her move to the Outreach

office is a demotion and thus an adverse action, a
characterization which, for the reasons discussed above, this
Court does not agree, Defendants have, nevertheless, articulated
a sufficient reason for the change: Dean Dorland decided that she
did not want an Assistant at that time and Plaintiff's assistance
was needed in Outreach.  While Plaintiff argues that the
Defendants' delay in recontracting Plaintiff is an adverse action
for which Defendants provide no reason, Defendants have made
clear that the delay in decision regarding Plaintiff's contract
was an attempt by Dean Dorland to give Plaintiff "more
opportunity to provide positive examples of her work and
potential."

        Because Defendants have provided adequate reasons, in
order to survive summary judgment, Plaintiff must submit
evidence,

            from which a factfinder could reasonably
            either (1) disbelieve the employer's
            articulated legitimate reasons; or (2)
            believe that an invidious discriminatory
            reason was more likely than not a motivating
            or determinative cause of the employer's
            action.

Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir.
1997) (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir.
1994)).

        First, Plaintiff fails to attempt to discredit
Defendants' articulated reason for the move to Outreach other

than to allege that the reasons behind the decision were
discriminatory.  Instead, Plaintiff conflates her arguments with
those related to the decision not to recontract, which, as
discussed below, are insufficient to defeat summary judgment.
Plaintiff tries to refute the evidence of negative performance
with past positive reviews and her statements that she could not
do her job well because Dr. Chin and Dean Dorland would not
communicate with her.  While the CBA states that the entire
performance record should be reviewed, the relevant question here
"is whether there is any reason to believe that [Dorland] did not
make the [] decision for the reasons [she] now tenders" that is,
she found Plaintiff was not performing adequately.  Turner v.
Schering-Plough Corp., 901 F. 2d 335, 344 (3d Cir. 1990)(finding
that past positive evaluation followed closely by negative
evaluation by decision maker did not create an issue of fact as
to reason for demotion).

          Plaintiff has neither presented evidence to this Court
to show that Chin's or Dorland's negative evaluations were
unjustified, nor that Dorland's decision to delay her decision
was for any reason other than to give Plaintiff more time to
provide positive examples of her work (which undermines
Plaintiff's allegation that Defendants were plotting against
her).  Plaintiff has done no more than claim that the real reason
for the negative evaluations was her age and that the documents
that support the negative performance review are "unsworn" and

thus "inadequate."  The fact that Melanie Basantis found Plaintiff's work satisfactory is insufficient to show that Chin and/or Dorland lied about finding her work unsatisfactory.  See Langley v. Merck, 186 Fed. Appx. 258, 261 (3d Cir. June 15, 2006) (finding that technical criticisms of employer's evaluation methods did not reveal the weaknesses, implausibilities, inconsistencies, incoherencies or contradictions necessary to show proffered reason was unworthy of credence.) (internal quotations omitted).

Moreover, instead of refuting Chin's concerns expressed via email that her performance on certain tasks was unsatisfactory, Plaintiff merely responded in an email that "I have certainly tried to do the very best I can." (See Defs.' Ex. K at D 493).  A plaintiff's assertions that she did as well as she could, however, is not enough to defeat summary judgment. See Keller, 130 F.3d 1101, 1109 (3d Cir. 1997)(finding that plaintiff could not survive summary judgment "simply by pointing to evidence that could convince a reasonable factfinder that he did as well as he could under the circumstances.").  Moreover, Plaintiff's belief that she did her job well or her disagreement with Chin and Dorland's evaluations is insufficient to show pretext; "what matters is the perception of the decision maker." Langley, 2005 U.S. Dist. LEXIS 10220 at * 12-13.

At the pretext stage Plaintiff must do more than show the employer's proffered reason was wrong but that "it was so

plainly wrong that it cannot have been the employer's real reason." Keller, 130 F.3d 1101, 1109 (3d Cir. 1997).  It is the duty of this Court to determine whether or not the Defendants' actions were motivated by discriminatory animus, not whether said decisions are "wise, shrewd, prudent or competent." Langley, 2005 U.S. Dist. LEXIS 10220 at * 11 (citations omitted).  While Plaintiff has presented evidence of some positive evaluations from others, she has not presented evidence that Chin and Dorland were not dissatisfied with her other than her bald assertion that such dissatisfaction was fabricated.  In fact, Plaintiff admitted an awareness that the "Dean has expressed concerns with my performance" and "[p]erhaps I needed to ask more questions regarding a different management style and expectations." (Pl.'s Ex. O at D 82-83.).  Overall, the evidence in front of this Court demonstrates that no reasonable jury could conclude that the Defendants' "dissatisfaction with [Plaintiff's] performance was so clearly unfounded that it cannot have been sincere." Id. at 1110.

        Plaintiff has also failed to present any evidence showing that invidious discrimination was the real motivating factor behind the adverse actions.  Plaintiff states that the fact that Dean Dorland was "several months older than [P]laintiff is irrelevant." (Pl.'s Br. at 18).  This Court disagrees.  The fact that the alleged purveyor of discrimination is older than plaintiff most certainly impacts the Court's analysis.  See

Dungee v. Northeast Foods, Inc., 940 F. Supp. 682, 688 n.3
(D.N.J. 1996) (stating that fact that the final decision maker is
a member of Plaintiff's class, "weakens any possible inference of
discrimination."). Plaintiff also asserts that the fact that
Perez-Colon is younger is evidence of invidious discrimination.[9]
However, the fact that her replacement is younger, without more,
does not suffice to show invidious discrimination was the real
reason for Defendants' actions. See Joseph v. First Judicial
Dist., 1999 U.S. Dist. LEXIS 888 at *16 (E.D. Pa. Feb. 2, 1999)
(stating that the fact that a younger person was hired to replace
a plaintiff, while helpful in establishing a prima facie case of
age discrimination, is not dispositive of whether an employer
discriminated based upon age). At best, Plaintiff can only
"surmise" that she was treated differently because of her age.
(See Pl.'s Depo. at 80:14) ("I believe that Dianne Dorland
discriminated against me, only she knows the reasons...I can only
surmise because I was the oldest woman in the office....").

    Even construing all reasonable inferences in favor of
Plaintiff, there is no evidence from which a reasonable
factfinder could conclude that Defendants' articulated reasons
were pretext as Plaintiff has not shown "such weaknesses,
implausibilities, inconsistencies, incoherencies or

---

[9] Plaintiff was born on September 18, 1947; Perez-Colon on
August 29, 1958. By this Court's calculations, this is an
approximate 10 year 11 months and 11 day difference.

contradictions" in said reasons such that a jury could conclude the reasons are "unworthy of credence." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994).  Therefore, Defendants are entitled to summary judgment on Plaintiff's age claims.

<u>(c) Other NJLAD Claims</u>:

The only remaining claims in this action are pursuant to state law: the NJLAD claim for national origin discrimination and the NJLAD claim for retaliation.  Once the claims over which a district court has original jurisdiction have been dismissed, a court may decline to exercise jurisdiction over supplemental state claims unless extraordinary circumstances exist.  28 U.S.C. 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- the district court has dismissed all claims over which it has original jurisdiction); <u>see</u> <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000) (upholding district court's decision to refuse to exercise supplemental jurisdiction over remaining state law claims).

Because this Court has granted summary judgment in favor of Defendants on Plaintiff's 42 U.S.C. §§ 1981, 1983, 1985, ADEA, and NJLAD race and age claims, it will decline to exercise jurisdiction over the remaining state law claims.  The state law claims will be dismissed without prejudice and, pursuant to 28 U.S.C. 1367(d), the statute of limitations for Plaintiff to bring

such claims in state court will be tolled for thirty days after the date of dismissal.  <u>Hedges</u>, at 123-24 (discussing tolling); <u>L-3 Communs. Corp. v. Clevenger</u>, 2004 U.S. Dist. LEXIS 17845 at * 20 (E.D. Pa. Aug. 31, 2004) (stating that Plaintiff had 30 days to re-file in state court where court declined to exercise supplemental jurisdiction).

**<u>Conclusion:</u>**

For the aforementioned reasons, Defendants are entitled to summary judgment on Plaintiff's claims for race discrimination and conspiracy to commit the same brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and the NLJAD.  Defendants are also entitled to summary judgment on Plaintiff's age discrimination claims pursuant to the ADEA and the NJLAD.  The remaining state law claims for retaliation and national origin discrimination will be dismissed without prejudice.

An accompanying Order will issue this date.


Dated: <u>March 30, 2007</u>          <u>s/Renée Marie Bumb</u>
                                RENÉE MARIE BUMB
                                United States District Judge